**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARLENE K. FISCUS,** | : | **Civ. No. 3:22-CV-1609** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **BIG BASS LAKE COMMUNITY** | : | |
| **ASSOCIATION INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. Factual Background

This case, which comes before us for consideration of a motion to dismiss the plaintiff's *pro se* complaint, invites us to examine whether federal employment discrimination laws, which are designed to protect employees, apply to disputes between unpaid, volunteer officers and directors of a homeowners' association. This motion to dismiss also calls upon us to assess the legal sufficiency of workplace harassment and retaliation claims which rest upon, and infer causation from, disparate acts which occurred months apart.

Darlene Fiscus, the *pro se* plaintiff, filed this action against Big Bass Lake Community Association, Inc., and several individual Board of Directors of this homeowner's association. (Doc. 1). In 2021, Fiscus became the Chair and Chief Operating Officer ("CEO") of the Association, a self-managed nonprofit

organization. (Id., at 6). The bylaws of the homeowners' association describe this as an unpaid, and essentially volunteer, position. In her complaint, she asserts gender-based harassment and discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and Pennsylvania Human Relations Act ("PHRA"), alleging that she was harassed because of her gender, and that she reported the harassment of a subordinate to the Board of Directors and was subsequently removed from her position as Chair and CEO and harassed by other Board members.

The plaintiff alleges that upon beginning her new position in 2021, the female General Manager, Ms. Shannon Ritzcke, faced "constant harassment" from other committee members that forced her constructive discharge. (Id.) Around October 2021, the plaintiff began observing and documenting what she characterizes as a hostile work environment directed at Ms. Ritzcke and other employees. (Id.) She then made arrangements for a private executive board meeting to address Ms. Ritzcke's treatment, an issue that the plaintiff believed required a professional mediator. (Id.) She then alleges that Defendant Kunin "yelled" at her for sharing the issue with an individual outside the organization. (Id.) Immediately after the meeting, Ms. Fiscus received an email which she alleges notified the Association of a special meeting on December 11, 2021 to remove her as Chair and CEO. (Id.)

After the plaintiff's removal as Chair and CEO, she remained on the board as a director, but claims that she was subject to harassment, personal attacks, deliberate

obstruction at meetings, and inaccuracies and defamatory remarks being recorded on the official meeting minutes. (Id.) Moreover, the purported negative treatment Ms. Ritzcke and other employees were allegedly subject to by the defendants continued after the plaintiff's removal as CEO and Chair. (Id.) An investigation by a board-selected management attorney was conducted by the defendants to address the hostile work environment. The plaintiff avers that this investigation was "heavily slanted" and was actually a vehicle by which the Board investigated her and Ms. Ritzcke rather than the board members alleged to have committed misconduct. (Id.) The outcome of this investigation is a report that the plaintiff was dismissed from the Board entirely in July of 2022 for "multiple fiduciary violations." (Id.)

In her complaint, Fiscus alleges that the was discriminated against because of her gender, and that she was retaliated against for reporting the harassment of another employee in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). (Id., at 3). She asserts these claims against the Association along with three other members of the Board and Association in their individual capacities. (Id., at 2).

The defendants have now filed the instant motion to dismiss. (Doc. 6). They assert that the plaintiff, as an unpaid member of the Board of Directors and Chair/CEO was not an "employee" of the Association for purposes of Title VII or the PHRA. In a similar fashion, the defendants argue that they are not liable with

respect to the plaintiff's PHRA claim because they are not her supervisors. The defendants further assert that the plaintiff has failed to state a claim alleging harassment based on her sex in violation of Title VII.

After consideration, we conclude that, as pleaded, the complaint has not established that the Association was Fiscus's employer for purposes of Title VII and the PHRA. We further conclude that a number of the Title VII and PHRA claims against the individual defendants should be dismissed. Accordingly, we will grant the defendants' motion to dismiss, but we will allow the *pro se* plaintiff leave to amend her complaint to address the deficiencies identified in this opinion.

## II.   <u>Discussion</u>

### A. <u>Motion to Dismiss - Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our

> opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.---, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." (<u>Id.</u>, at 555.) "Factual allegations must be enough to raise a right to relief above the speculative level." (<u>Id.</u>)

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when dismissing a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (Id., at 679.) According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by the mere conclusory statements, do not suffice." (Id., at 678.) Rather in conducting a view of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Id., at 679.)

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First,

the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." (Id., at 1950.) Finally,

"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, when presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003); Youse v. Carlucci, 867 F.Supp. 317, 318 (E.D.Pa.1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

## B. **The Defendants' Motion to Dismiss will be Granted.**

As we have noted, the plaintiff asserts claims under Title VII and the PHRA against the defendants, alleging that she endured a hostile work environment because of her sex and that she was retaliated against for reporting the harassment of others. However, as we will discuss, Ficus's complaint has not pleaded sufficient facts from which we can infer that she was an employee of the Association for purposes of Title VII and the PHRA. Additionally, Fiscus has not shown that the individual defendants are subject to her PHRA claim and her retaliation claim fails as currently pleaded. Accordingly, we will grant the defendants' motion to dismiss these claims, but allow the plaintiff leave to amend her complaint and endeavor to set forth factual allegations to support her claims.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against and/or discharging their employees because of their sex. 42 U.S.C. § 2000e-2(a)(1).[1] Title VII discrimination claims are governed by a burden-shifting framework. See Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 325-26 (3d Cir. 2015). In brief, that framework requires that the plaintiff demonstrate that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) under circumstances that give rise to an inference of unlawful sex-based discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The last element also requires that the plaintiff demonstrate a causal connection between her protected status and the allegedly adverse action. Id. at 798. The key focus of the *prima facie* test is "always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" Id. (citation omitted). The elements of the *prima facie* case "must not be applied woodenly but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

---

[1] The plaintiff's PHRA claims are subject to the same analysis as her Title VII claims, and thus, our analysis of the Title VII claims applies with equal force to the PHRA claims. See Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995); Keslosky v Borough of Old Forge, 66 F.Supp.3d 592, 627 (M.D. Pa. 2014).

Title VII also contains a retaliation provision. To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017). Ultimately, a plaintiff bringing a Title VII retaliation claim must be able to show that her participation in protected activity was the but-for cause of any alleged adverse employment action that he suffered. Univ. of Texas v. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); see also Grevious, 851 F.3d at 257 (noting that a plaintiff alleging Title VII retaliation "has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII"). "The ultimate question in any retaliation case is an intent to retaliate vel non." Jensen v. Potter, 435 F.3d 444, 449 n.2 (3d Cir. 2006).

Title VII claims are subject to the McDonnell Douglas burden-shifting framework. Thus, if the employee establishes a *prima facie* case of discrimination or retaliation based upon sex, the burden shifts to the employer to advance a

legitimate, non-discriminatory and non-retaliatory reason for its conduct, and if the employer does so "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that [discrimination or] retaliation was the real reason for the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)).

However, it is well settled that as a threshold matter, under Title VII "[a plaintiff] must allege an employment relationship with defendants." Moffett v. Woodlake Props., LLC., 2021 WL 4123914, at *3 (E.D. Pa. 2021) (quoting Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 199 (3d Cir. 2013)) (alterations in original). In this case, Fiscus asserts that as the CEO and Chair of the Association, she was an employee of the Association, even though hers was an unpaid voluntary position and as a director of the HOA she held a co-equal title with other directors. Upon reflection, on the unusual facts recited in the complaint we find that the plaintiff has not set forth sufficient factual allegations to show that she had an employment relationship with the Association for purposes of Title VII.

Title VII defines "employee" in a somewhat tautological fashion as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The initial question of whether a shareholder-director may be considered an employee centers around the degree of control the individual had within the organization. Clackamas

Gastroenterology Assocs., P.C., v. Wells, 538 U.S. 440, 448 (2003) The Supreme Court endeavored to prescribe the use of six factors laid out by the Equal Employment Opportunity Commission ("EEOC") when answering the very narrow question of when a shareholder-director qualifies as an employee. The list of six relevant but nonexhaustive factors are as follows:

(1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;

(2) Whether and, if so, to what extent the organization supervises the individual's work;

(3) Whether the individual reports to someone higher in the organization;

(4) Whether and, if so, to what extent the individual is able to influence the organization;

(5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and

(6) Whether the individual shares in the profits, losses, and liabilities of the organization.

Id. at 449-50 (citing EEOC Compliance Manual § 605:0009). Upon application of these factors, "all incidents of the relationship must be assessed and weighed with no one factor being decisive." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992) (citing NLRB v. United Ins. Co. of America, 390 U.S. 254, 258 (1968)). Although the Clackamas Court specifically applied these factors to an employment status determination under the Americans with Disabilities Act ("ADA"), the Third Circuit has instructed that these factors apply to Title VII employee status

determinations as well. <u>Mariotti v. Mariotti Bldg. Prods.</u>, 714 F.3d 761, 766 (3d Cir. 2013).

After careful consideration of these factors, we conclude that the complaint does not set forth factual allegations at this juncture from which we can infer that, as the unpaid CEO and Chair of the Association, Fiscus qualified as an "employee" of the Association.[2] Significantly, the complaint  asserts that the Chair and CEO position, as well as the director positions, were all elected, unpaid positions. Thus, the role of Fiscus in this HOA was essentially an unpaid volunteer position.  On this score, numerous courts have held that unpaid volunteers are not "employees" for purposes of Title VII actions. <u>See e.g.</u>, <u>York v. Ass'n of the Bar of the City of New York</u>, 286 F.3d 122 (2d Cir. 2002) (attorney working as an unpaid volunteer was not an "employee" of the bar association for Title VII purposes); <u>Payne v. Prevention Point Phila., Inc.</u>, 2021 WL 2414606, at *4 (E.D. Pa. June 14, 2021) (unpaid intern not an "employee" under Title VII); <u>McCabe v. Mutual Aid Ambulance Serv., Inc.</u>, 2015 WL 4715260, at *5 (W.D. Pa. Aug. 7, 2015) (unpaid volunteer board member

---

[2] Although the plaintiff did not attach the bylaws to her complaint, she references the bylaws and argues that her duties as Chair and CEO were that of an employee, and the defendants have attached a copy of the bylaws to their motion to dismiss. (Doc. 6-3). Accordingly, the court may consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

was not an employee under Title VII); <u>Day v. Jeannette Baseball Ass'n</u>, 2013 WL 5786457 (W.D. Pa. Oct. 28, 2013) (volunteer baseball coach was not an "employee" protected by Title VII); <u>Hall v. Delaware Council on Crime and Justice</u>, 780 F.Supp. 241, 244 (D. Del. 1992) (finding that reimbursement for work-related expenses did not qualify as compensation to raise volunteer's status to an employee for purposes of Title VII protection).   In particular, courts have held that unpaid volunteer directors of non-profit organizations do not qualify as "employees" within the meaning of Title VII and other related civil rights statutes.   <u>See e.g.</u>, <u>Fichman v. Media Ctr.</u>, 512 F.3d 1157, 1158 (9th Cir. 2008) (directors of a nonprofit organization were not employees for purposes of the ADA); <u>Springer v. First Call Pregnancy Ctr., Inc.</u>, No. 3:19-CV-30 (CDL), 2020 WL 3268902, at *1 (M.D. Ga. Apr. 1, 2020), <u>aff'd sub nom.</u> <u>Springer v. First Call Pregnancy Ctr.</u>, 831 F. App'x 475 (11th Cir. 2020); <u>McCabe v. Mutual Aid Ambulance Serv., Inc.</u>, 2015 WL 4715260, at *5; <u>Chavero v. Loc. 241, Div. of the Amalgamated Transit Union</u>, 787 F.2d 1154, 1156 (7th Cir. 1986); <u>Schoenbaum v. Orange Cnty. Ctr. for Performing Arts, Inc.</u>, 677 F. Supp. 1036, 1038 (C.D. Cal. 1987).

The parties' intent is also a consideration for us to address, specifically whether the parties intended Fiscus to be an employee as expressed in written agreements and contracts. Neither the plaintiff nor the defendants made assertions regarding the employment status intentions of the bylaws. However, the bylaws

never expressly hold out the Chair and CEO, or any other Board member for that matter, to be an employee. Rather, it is clear that these are unpaid positions which generally fall beyond the ambit of Title VII. Accordingly, we cannot conclude at this time that the complaint sets forth sufficient facts to show that Fiscus was an "employee" of the Association entitled to the protections of Title VII and the PHRA. Further, as we will discuss below, we find that the complaint as currently pleaded fails to set forth facts supporting a number of Fiscus's substantive claims.

As we have stated, a plaintiff alleging discrimination under Title VII must set forth a *prima facie* case of discrimination. Regarding a claim involving a hostile work environment, a plaintiff must show "(1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability." Bumbarger v. New Enterprise Stone and Lime Co., Inc., 170 F.Supp.3d 801, 826 (E.D. Pa. 2016) (quoting Martinez v. Rapidigm, Inc., 290 F. App'x 521, 524 (3d Cir. 2008) (internal quotation marks omitted)).

In this case, the complaint contains only bare and conclusory allegations that Fiscus was subject to "harassment." Fiscus simply asserts that she "experienced sex discrimination from both other members of the board and the Association." (Doc. 1, at 6). The complaint then alleges that Fiscus was subjected to harassment, in that she

was told her emails were aggressive and she faced "deliberate obstruction" and board

and committee meetings. (Id.) Notably missing from these allegations, however, are

factual allegations that any of the alleged discriminatory actions were taken *because*

*of her sex.* Fiscus's complaint also fails to assert any factual support for a showing

of *respondeat superior* liability. Accordingly, as currently pleaded, this complaint

fails as a matter of law with respect to this hostile work environment claim.

Fiscus' retaliation claim is also problematic as it is currently pleaded, at least

in part. As we have explained, establishing a claim under a Title VII retaliation

theory requires a showing of (1) the plaintiff engaging in a protected activity, (2) the

plaintiff suffering an adverse employment action, and (3) a causal connection

between protected activity and adverse employment actions. Carvalho-Grevious,

851 F.3d at 257.

> With respect to this third element of causation:
>
> The Third Circuit has instructed that in cases where the temporal proximity between the protected activity and adverse action is "unusually suggestive," this timing alone can be sufficient to establish a *prima facie* case of retaliation. LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 231 (3d Cir. 2007). In cases in which the temporal proximity is not unusually suggestive, "we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.' " Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

Bonson v. Hanover Foods Corp., 451 F. Supp. 3d 345, 358 (M.D. Pa. 2020).

As for the issue of temporal proximity as proof of retaliatory animus:

> While the court of appeals has not specified a strict formula for what is considered to be too long of a gap between protected activity and adverse action, courts have held that a time span of several months is too great. See Williams v. Phila. Hous. Auth., 380 F.3d 751, 760 (3d Cir.2004) (two months too long to permit an inference of causation); George v. Genuine Parts Co., No. 04–108, 2007 WL 217684, at *12 (W.D.Pa. Jan. 25, 2007) (finding that though suggestiveness is highly sensitive to the facts of each case, a three-month gap "is not so close as to be unusually suggestive of retaliatory motive, especially where an obvious and unimpeached non-retaliatory motive exists"). Timing, however, in connection with other types of suggestive evidence, is sufficient to demonstrate the causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280–81 (3d Cir.2000); see Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir.1997) (holding that "when temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.")

Yeager v. UPMC Horizon, 698 F. Supp. 2d 523, 547–48 (W.D. Pa. 2010). Applying these benchmarks, it has been held that a gap of seven months between protected conduct and some adverse action is simply too great a temporal gulf to permit a reasonable inference of retaliation. Id.

In the instant case, Fiscus contends that she reported the sexual harassment of another employee, the General Manager, to other directors on the Board in October of 2021. The complaint further alleges that Fiscus called a meeting of the board on December 8, 2021 to discuss the alleged hostile work environment the General Manager was subjected to. She then asserts that the same day, December 8, she received an email about a meeting on December 11, 2021, which was called to remove Fiscus as Chair and CEO of the Association, after which she was removed

from the Chair and CEO position. These allegations may be legally sufficient to state a retaliation claim with respect to Fiscus' December 2021 termination as CEO, provided that Fiscus can also show that she was an employee covered by Title VII.

However, Fiscus further contends that she was then removed from the Board entirely some seven month later in July of 2022. In our view, absent further well-pleaded facts, this seven to nine month gulf between Fiscus' allegedly protected activities and her removal from the board may be too temporally remote to support a claim for Title VII retaliation. However, as we have found that Fiscus's complaint fails to show that she is an employee of the Association, this claim will be dismissed without prejudice to allow Fiscus leave to amend her complaint.

Finally, we agree with the defendants that as to Fiscus's PHRA claim against the individual defendants, this claim fails as a matter of law. Indeed, it is well settled that supervisory status is necessary for any PHRA claim premised on individual liability for aiding or abetting acts of discrimination. On this score, it has been held that that:

> "[D]istrict courts sitting in the Third Circuit have consistently held that '[l]iability under § 955(e) attaches only to supervisory employees.'" Suero v. Motorworld Auto. Grp., Inc., No. 16-686, 2017 WL 413005, at *5 (M.D. Pa. Jan. 31, 2017) (collecting cases). This approach to § 955(e) liability tracks "the theory that only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." See, e.g., Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) (Vanaskie, J.) (citing Bacone v. Philadelphia Housing Auth., No. 01-419, 2001 WL 748177, *2 (E.D. Pa. June 27, 2001).

McAssey v. Discovery Mach., Inc., No. 4:16-CV-705, 2017 WL 3084676, at *2 (M.D. Pa. July 20, 2017).

In the instant case, the complaint is devoid of factual allegations suggesting that the individual defendants—other directors of the Board—were the plaintiff's supervisors. Rather, as unpaid volunteer members of this HOA board they appear to be colleagues and co-equals of the plaintiff, albeit contentious co-equals. Accordingly, in the absence of further well-pleaded facts this claim against these individual defendants will be dismissed.

Since Fiscus's complaint, in its current form, fails to set forth factual allegations supporting these Title VII and PHRA discrimination and retaliation claims, the complaint fails as a matter of law and should be dismissed. Yet, while this merits analysis calls for dismissal of this action in its current form, acting out of an abundance of caution we will give the plaintiff another opportunity to further litigate this matter by endeavoring to promptly file an amended complaint which sets forth sufficient specific facts to plausibly state a claim under Title VII and the PHRA. We follow this course mindful of the fact that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not

necessary because amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

We also recognize that Fiscus has recited additional facts in her opposition to this motion to dismiss, factual details that are not set forth in her complaint. Fiscus invites us to consider these matters in addressing this motion to dismiss, but we cannot. At this stage of the proceedings our judgment is confined to an evaluation of the plaintiff's complaint and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007). Accordingly, we will dismiss this complaint without prejudice to the plaintiff endeavoring to correct the deficiencies we have identified in this Memorandum Opinion.

## III.   **Conclusion**

Accordingly, for the foregoing reasons, the defendants' motion to dismiss (Doc. 6) will be GRANTED, and the plaintiff's complaint will be dismissed without prejudice to allow her the opportunity to correct the deficiencies we have identified.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge