# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARLENE K. FISCUS,** | : | **Civ. No. 3:22-CV-1609** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **BIG BASS LAKE COMMUNITY** | : | |
| **ASSOCIATION INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

Pending before the court is a motion to dismiss the *pro se* plaintiff's amended complaint. (Doc. 17). The plaintiff, Darlene Fiscus, brought this action against Big Bass Lake Community Association (the "Association") and several individual defendants, alleging that she was discriminated against and subjected to a hostile work environment because of her gender in violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"), and that she was retaliated against when she attempted to report instances of workplace discrimination. (Doc. 1). The defendants[1] filed a motion to dismiss, and we granted the motion without prejudice to the plaintiff endeavoring to amend her complaint.

---

[1] We note that Mark Piazza, Esq., has been named as a defendant in both the original and amended complaint, but it appears that the plaintiff has never properly served this defendant.

(Docs. 6, 14, 15). Specifically, we found that the plaintiff had not pleaded facts to show that she was an "employee" of the Association under Title VII, or that the individual defendants were her supervisors under the PHRA. (Doc. 14). We also found that the allegations underlying the plaintiff's harassment and retaliation claims failed to make a connection between the alleged actions taken against her and her gender. (Id.)

Thus, the plaintiff filed an amended complaint, which, in essence, sets forth the same factual narrative as her initial complaint, while including additional factual allegations that, in our view, do nothing to further advance her Title VII and PHRA claims against the defendants. (Doc. 16). The defendants subsequently filed a motion to dismiss the amended complaint. (Doc. 17). After consideration, and for the following reasons, we will grant the defendants' motion and dismiss the amended complaint with prejudice.

## II. __Background__

The factual allegations in Fiscus' amended complaint largely mirror her initial complaint. On this score, Fiscus alleges that she began working for the Association in July of 2020, and by July of 2021, was brought into the position of Chair and CEO of the Board. (Doc. 16, at 2). The Chair/CEO position was an unpaid, volunteer position on the Association's Board. (Id.) The amended complaint asserts that Fiscus, as Chair/CEO, had managerial and fiduciary duties, including approving

expenditures, signing checks, and hiring the General Manager/Chief Operating Officer. (Id.) Fiscus asserts that as the Chair/CEO, her work was an "integral part of the business of BBLCA as an employer." (Id.) For the first six months that Fiscus was the Chair/CEO, there was a vacancy in the GM/COO position, and she alleges that she was expected to fill the gap in duties. (Id.) When Shannon Ritzke was ultimately hired as the GM/COO, Fiscus alleges she spent more than 20 hours per week onboarding Ms. Ritzke, who reported to Fiscus in her role as CEO. (Id.) According to the amended complaint, the Association was, at this point, in a "dire state of affairs," due to what Fiscus describes as "fraud and a history of mismanagement." (Id., at 3).

Fiscus alleges that after Ms. Ritzke came on board, she began to notice that Ms. Ritzke was being subjected to a hostile work environment. (Id., at 4). Thus, she asserts that individual Board members, including Defendant Kunin, demanded that Ms. Ritzke provide a level of detail in her reports that was not expected of the previous GM, who was a male. (Id.) Fiscus further alleges that the male Board members constantly questioned Ms. Ritzke's professional judgment and abilities because she was a woman. (Id.) Fiscus also asserts that she experienced harassment because of her gender, in that she had spoken up at a meeting and was told by Defendant Bonawitz that she had been disrespectful, whereas other male members who got into a physical altercation during a meeting were not similarly reprimanded.

(Id.) She further describes the ways in which she believed she and other women were being discriminated against, such as micromanagement from male Board members, questioning of their professional judgment, and failing to heed their professional advice. (Id.)

Thus, Fiscus began exploring options to seek outside help for what she contends was a hostile work environment toward women in the Association. (Id.) However, Fiscus alleges that when she attempted to do so, male members of the Board, such as Defendants Piazza and Bonawitz, "exploited loopholes in the BBLCA By-laws" in order "to gain supervisory capacity over [her] to dictate what [she] could and could not do as Chair and CEO." (Id., at 5). Fiscus further asserts that these male board members exploited other female board members to accomplish their retaliatory objectives toward Fiscus, Ritzke, and other women in the Association. (Id.) Ultimately, the complaint alleges that Defendant Piazza collaborated with several other Board members at a meeting on November 20, 2021, to force Fiscus to resign as Chair/CEO. (Id.) Fiscus contends that this was another example of harassing and discriminatory behavior directed at her, as "no one outside of the existing male-dominated power structure had complained through official channels about [her] performance as CEO." (Id.) Fiscus refused to resign. (Id.)

The following day, on November 21, 2021, Fiscus notified Defendants Bonawitz and Kunin that Ms. Ritzke was being subjected to a hostile work

environment. (Id.) She contends that Bonawitz "took over" as the negotiator and demanded that she attend a secret board meeting and apologize for her "rude emails." (Id., at 6). Fiscus refused to attend the meeting but offered to call an official special board meeting to address the concerns of her other Board members. (Id.) The complaint alleges that Bonawitz declined her offer and refused to respect her authority as CEO, calling her "difficult" and "unreasonable," and "blatantly acting as [her] superior." (Id.)

Thus, Fiscus called a special Board meeting on December 8, 2021, which included a private executive session to address the treatment of Ms. Ritzke. (Id.) However, while Bonawitz and Kunin assured her that they would do whatever it took to move forward, Fiscus alleges that they turned the meeting into a critique of Ms. Ritzke and herself. (Id.) She further asserts that she attempted to bring in an outside mediator for the meeting, and that she was yelled at by Kunin for discussing it outside of the organization. (Id.) Immediately following this December 8 meeting, Fiscus alleges she received an email from Piazza, which instructed Ms. Ritzke to send out a notice of a meeting to be held on December 11 to remove Fiscus as Chair and CEO. (Id.) Fiscus' complaint asserts that the immediacy of this email shows the harassing and retaliatory intent of the defendants to remove her from the Board. (Id.)

At the December 11 meeting, Fiscus asserts that she and Ms. Ritzke were effectively put on trial in "a type of 'kangaroo court,'" in which they were spoken to

in a demeaning manner, given no opportunity to respond, and ultimately "found []
'guilty' of not meeting their outrageous and sexist expectations." (Id., at 7). Fiscus
was ultimately removed from her unpaid volunteer position as Chair/CEO and
alleges that she was replaced by another female member whom the Board elected to
deflect from their discriminatory behavior and who the Board could easily
manipulate. (Id., at 7-8). When this female Chair/CEO resigned, Defendant
Bonawitz took over as Chair/CEO. (Id., at 8).

Following Fiscus' removal as Chair/CEO, she remained on the Board as a
director. (Id.) However, Ms. Ritzke ultimately resigned in January of 2022, which
Fiscus characterizes as a constructive discharge. (Id.) Additionally, an investigation
was initiated by the Board, which Fiscus contends she was unaware of, and that this
investigation was ultimately designed as a campaign for the Board to fire her. (Id.)
The investigation ultimately ended with Fiscus being removed from the Board in
July of 2022 based on a finding that she breached her fiduciary duties. (Id., at 11).
Fiscus contends that the investigation, as well as the July 2022 meeting itself, was
all done in retaliation for her attempts to bring the hostile work environment and the
discriminatory acts of the defendants to light. (Id.) She further asserts that she
continued to experience harassment and discrimination after she was removed from
the Board. (Id., at 11-12).

In her amended complaint, Fiscus alleges that the was discriminated against because of her gender, and that she was retaliated against for reporting the harassment of herself and Ms. Ritzke in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). (Id., at 15). She asserts these claims against the Association along with three other members of the Board and Association in their individual capacities. (Id., at 1).

The defendants have now filed the instant motion to dismiss the amended complaint. (Doc. 17). They assert that the plaintiff has still failed to allege that she was an "employee" of the Board, or that the individual defendants were her supervisors. After consideration, we conclude that as pleaded, the amended complaint has failed to establish that the Association was Fiscus' employer for purposes of Title VII and the PHRA. We further conclude that the PHRA claims against the individual defendants should be dismissed. Accordingly, we will grant the defendants' motion to dismiss.

## III.   <u>Discussion</u>

### A. <u>Motion to Dismiss - Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for

the legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal

court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.---, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." (Id., at 555.) "Factual allegations must be enough to raise a right to relief above the speculative level." (Id.)

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when dismissing a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (Id., at 679.) According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by the mere conclusory statements, do not suffice." (Id., at 678.) Rather in conducting a view of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Id., at 679.)

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should
> identify allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." (Id., at 1950.) Finally,
> "where there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give
> rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129

S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)

(holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, when presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003); Youse v. Carlucci, 867 F.Supp. 317, 318 (E.D.Pa.1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

### B. The Defendants' Motion to Dismiss will be Granted.

As we have noted, the plaintiff asserts claims under Title VII and the PHRA against the defendants, alleging that she endured a hostile work environment because of her sex and that she was retaliated against for reporting the harassment of others. However, Title VII and the PHRA do not apply to every form of interaction between individuals. Rather, their scope is strictly limited to an employment context and,  as

we will discuss, Fiscus' amended complaint has not pleaded sufficient facts from which we can infer that she was an employee of the Association for purposes of Title VII and the PHRA. Additionally, Fiscus has not shown that the individual defendants are subject to her PHRA claim. Accordingly, we will grant the defendants' motion to dismiss these claims.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against and/or discharging their employees because of their sex. 42 U.S.C. § 2000e-2(a)(1).[2] Title VII discrimination claims are governed by a burden-shifting framework. See Jones v. Southeastern Pa. Transp. Auth., 796 F.3d 323, 325-26 (3d Cir. 2015). In brief, that framework requires that the plaintiff demonstrate that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) under circumstances that give rise to an inference of unlawful sex-based discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The last element also requires that the plaintiff demonstrate a causal connection between her protected status and the allegedly adverse action. Id. at 798. The key focus of the *prima facie* test is "always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'"

---

[2] The plaintiff's PHRA claims are subject to the same analysis as her Title VII claims, and thus, our analysis of the Title VII claims applies with equal force to the PHRA claims. See Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995); Keslosky v Borough of Old Forge, 66 F.Supp.3d 592, 627 (M.D. Pa. 2014).

Id. (citation omitted). The elements of the *prima facie* case "must not be applied woodenly but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

Title VII also contains a retaliation provision. To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017). Ultimately, a plaintiff bringing a Title VII retaliation claim must be able to show that her participation in protected activity was the but-for cause of any alleged adverse employment action that he suffered. Univ. of Texas v. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); see also Grevious, 851 F.3d at 257 (noting that a plaintiff alleging Title VII retaliation "has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII"). "The ultimate question

in any retaliation case is an intent to retaliate vel non." <u>Jensen v. Potter</u>, 435 F.3d 444, 449 n.2 (3d Cir. 2006).

Title VII claims are subject to the <u>McDonnell Douglas</u> burden-shifting framework. Thus, if the employee establishes a *prima facie* case of discrimination or retaliation based upon sex, the burden shifts to the employer to advance a legitimate, non-discriminatory and non-retaliatory reason for its conduct, and if the employer does so "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that [discrimination or] retaliation was the real reason for the adverse employment action." <u>Moore v. City of Phila.</u>, 461 F.3d 331, 342 (3d Cir. 2006) (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 500-01 (3d Cir. 1997)).

However, it is well settled that as a threshold matter, under Title VII "[a plaintiff] must allege an employment relationship with defendants." <u>Moffett v. Woodlake Props., LLC.</u>, 2021 WL 4123914, at *3 (E.D. Pa. 2021) (quoting <u>Covington v. Int'l Ass'n of Approved Basketball Offs.</u>, 710 F.3d 114, 199 (3d Cir. 2013)) (alterations in original). In this case, Fiscus asserts that as the CEO and Chair of the Association, she was an employee of the Association. Upon reflection, we find that the plaintiff has not set forth factual allegations to show that she had an employment relationship with the Association for purposes of Title VII.

Title VII defines "employee" in a somewhat tautological fashion as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The initial question of whether a shareholder-director may be considered an employee centers around the degree of control the individual had within the organization. Clackamas Gastroenterology Assocs., P.C., v. Wells, 538 U.S. 440, 448 (2003) The Supreme Court endeavored to prescribe the use of six factors laid out by the Equal Employment Opportunity Commission ("EEOC") when answering the very narrow question of when a shareholder-director qualifies as an employee. The list of six relevant but nonexhaustive factors are as follows:

(1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;

(2) Whether and, if so, to what extent the organization supervises the individual's work;

(3) Whether the individual reports to someone higher in the organization;

(4) Whether and, if so, to what extent the individual is able to influence the organization;

(5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and

(6) Whether the individual shares in the profits, losses, and liabilities of the organization.

Id. at 449-50 (citing EEOC Compliance Manual § 605:0009). Upon application of these factors, "all incidents of the relationship must be assessed and weighed with no one factor being decisive." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318,

324 (1992) (citing <u>NLRB v. United Ins. Co. of America</u>, 390 U.S. 254, 258 (1968)).

Although the <u>Clackamas</u> Court specifically applied these factors to an employment

status determination under the Americans with Disabilities Act ("ADA"), the Third

Circuit has instructed that these factors apply to Title VII employee status

determinations as well. <u>Mariotti v. Mariotti Bldg. Prods.</u>, 714 F.3d 761, 766 (3d Cir.

2013).

After careful consideration of these factors, we conclude that the amended

complaint still fails to set forth facts from which we can infer that, as the unpaid

CEO and Chair of the Association, Fiscus qualified as an "employee" of the

Association.[3]

Like her initial complaint, the amended complaint alleges that the Chair and

CEO position was an elected, unpaid position. Likewise the directors of the HOA

were unpaid volunteers. Thus, the role of Fiscus in this HOA was essentially an

unpaid volunteer position. On this score, as we noted in our prior Memorandum

Opinion, numerous courts have held that unpaid volunteers are not "employees" for

---

[3] Although the plaintiff did not attach the bylaws to her complaint, she references
the bylaws and argues that her duties as Chair and CEO were that of an employee,
and the defendants have attached a copy of the bylaws to their motion to dismiss.
(Doc. 18-1). Accordingly, ! the court may consider
"undisputedly authentic document[s] that a defendant attached as an exhibit to
a motion to dismiss if the plaintiff's claims are based on the [attached]
documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192,
1196 (3d Cir. 1993).

purposes of Title VII actions. <u>See e.g.</u>, <u>York v. Ass'n of the Bar of the City of New
York</u>, 286 F.3d 122 (2d Cir. 2002) (attorney working as an unpaid volunteer was not
an "employee" of the bar association for Title VII purposes); <u>Payne v. Prevention
Point Phila., Inc.</u>, 2021 WL 2414606, at *4 (E.D. Pa. June 14, 2021) (unpaid intern
not an "employee" under Title VII); <u>McCabe v. Mutual Aid Ambulance Serv., Inc.</u>,
2015 WL 4715260, at *5 (W.D. Pa. Aug. 7, 2015) (unpaid volunteer board member
was not an employee under Title VII); <u>Day v. Jeannette Baseball Ass'n</u>, 2013 WL
5786457 (W.D. Pa. Oct. 28, 2013) (volunteer baseball coach was not an "employee"
protected by Title VII); <u>Hall v. Delaware Council on Crime and Justice</u>, 780 F.Supp.
241, 244 (D. Del. 1992) (finding that reimbursement for work-related expenses did
not qualify as compensation to raise volunteer's status to an employee for purposes
of Title VII protection). In particular, courts have held that unpaid volunteer
directors of non-profit organizations do not qualify as "employees" within the
meaning of Title VII and other related civil rights statutes. <u>See e.g.</u>, <u>Fichman v.
Media Ctr.</u>, 512 F.3d 1157, 1158 (9th Cir. 2008) (directors of a nonprofit
organization were not employees for purposes of the ADA); <u>Springer v. First Call
Pregnancy Ctr., Inc.</u>, No. 3:19-CV-30 (CDL), 2020 WL 3268902, at *1 (M.D. Ga.
Apr. 1, 2020), <u>aff'd sub nom.</u> <u>Springer v. First Call Pregnancy Ctr.</u>, 831 F. App'x 475
(11th Cir. 2020); <u>McCabe v. Mutual Aid Ambulance Serv., Inc.</u>, 2015 WL 4715260,
at *5; <u>Chavero v. Loc. 241, Div. of the Amalgamated Transit Union</u>, 787 F.2d 1154,

1156 (7th Cir. 1986); Schoenbaum v. Orange Cnty. Ctr. for Performing Arts, Inc., 677 F. Supp. 1036, 1038 (C.D. Cal. 1987).

Additionally, the bylaws never expressly hold out the Chair and CEO, or any other Board member for that matter, to be an employee. Rather, it is clear that these are unpaid positions which generally fall beyond the ambit of Title VII.

Fiscus has attempted to add factual allegations in her amended complaint which she asserts show that she is an employee of the Association. On this score, Fiscus has included allegations regarding her duties as the CEO, including hiring the GM, signing checks, and approving expenditures. (Doc. 16, at 2). She additionally asserts that she "became Chair and CEO under unusual circumstances that affected [her] relationship with BBLCA, fashioning it to be more akin to an employee-employer relationship than would typically be the case." (Id.) She then goes on to describe how she assumed the GM/COO responsibilities while the Board searched for a candidate, who she then onboarded and trained. (Id.) However, these allegations, in our view, are still not sufficient to allege an employer-employee relationship between Fiscus and the Association. Indeed, these allegations do not show that anyone in the Association supervised her work or that she reported to anyone on the Board. Rather, it appears that Fiscus was doing the work of both the GM/COO and the Chair/CEO for a short period of time, and there are no allegations that she reported to or was supervised by anyone else on the Board. Similarly, her

conclusory allegations that the defendants usurped her authority as Chair/CEO in order to oust her from her position are equally unavailing.

Accordingly, we cannot conclude that the amended complaint sets forth sufficient facts to show that Fiscus was an "employee" of the Association entitled to the protections of Title VII and the PHRA.

Nor can we conclude that Fiscus has shown the individual defendants were her supervisors under the PHRA. As we have explained in our prior Memorandum Opinion, is well settled that supervisory status is necessary for any PHRA claim premised on individual liability for aiding or abetting acts of discrimination. On this score, it has been held that that:

> "[D]istrict courts sitting in the Third Circuit have consistently held that '[l]iability under § 955(e) attaches only to supervisory employees.'" Suero v. Motorworld Auto. Grp., Inc., No. 16-686, 2017 WL 413005, at *5 (M.D. Pa. Jan. 31, 2017) (collecting cases). This approach to § 955(e) liability tracks "the theory that only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." See, e.g., Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) (Vanaskie, J.) (citing Bacone v. Philadelphia Housing Auth., No. 01-419, 2001 WL 748177, *2 (E.D. Pa. June 27, 2001).

McAssey v. Discovery Mach., Inc., No. 4:16-CV-705, 2017 WL 3084676, at *2 (M.D. Pa. July 20, 2017).

In the instant case, the amended complaint is devoid of factual allegations suggesting that the individual defendants—other directors of the Board—were the plaintiff's supervisors. Rather, as unpaid volunteer members of this HOA board they

appear to be colleagues and co-equals, albeit contentious co-equals. As we have discussed with respect to the plaintiff's status as an employee under Title VII, there are no facts to indicate that the plaintiff reported to any of these individuals or was supervised by them, or that they had any authority over her; rather, it is undisputed that the plaintiff was the Chair/CEO and had employees reporting to her. Accordingly, this PHRA claim fails as a matter of law[4]

Since Fiscus's complaint, in its current form, still fails to set forth factual allegations supporting these Title VII and PHRA discrimination and retaliation claims, this amended complaint fails as a matter of law and will be dismissed. Moreover, while we are mindful of the fact that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary because amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004), in the instant case, the plaintiff's claims continue to suffer from the same fatal flaws as in her initial complaint. Because the plaintiff cannot show that she meets the threshold requirements under Title VII and

---

[4] Because we have found that the plaintiff has failed to meet these threshold requirements under Title VII and the PHRA, we decline to address the merits of the plaintiff's substantive claims of discrimination and retaliation.

the PHRA, we find that leave to amend her complaint would be futile. Accordingly, the plaintiff's complaint will be dismissed with prejudice.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the defendants' motion to dismiss (Doc. 17) will be GRANTED, and the plaintiff's amended complaint will be dismissed with prejudice.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: August 11, 2023